## HUMBLE OIL & REFINING CO v. LLOYD ROYAL BELGE SOCIETE ANONYME.

### No. 9366.

District Court, E. D. New York.

Jan. 9, 1931.

Bigham, Englar, Jones & Houston, of New York City (C. W. Hagen, of New York City, of counsel), for libelant.

Loomis & Ruebush, of New York City (Homer L. Loomis and Glenn W. Ruebush, both of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This suit is brought by the libelant to recover damages alleged to have been caused to its Barge No. 1, by the steamship Brazilier coming into contact with said barge, in Texas City channel.

It is to be noted that the libelant did not proceed against the tug Anita, which had the Barge No. 1 in tow at the time in question, and it was not until after the first trial that it was learned that the tug Anita was owned by the libelant at the time of the happening of the event in question.

Judge Inch properly held that the local proctors were not subject to criticism because thereof, but, in approaching a decision of this case, in the light of the knowledge we now have of libelant's ownership of the Anita, libelant's position is necessarily somewhat changed, for the reason that it is no longer to be considered as the innocent owner of the Barge No. 1, entitled to recover from either or both the steamship Brazilier and the tug Anita, but, as the owner of the Anita, in order to recover from the respondent, is bound to show that the steamship Brazilier is to blame in whole or in part, and that the Anita is free from blame in whole or in part.

The libelant has produced no witnesses, although ample opportunity was afforded the libelant to locate and take the testimony of the bargee of Barge No. 1, and on this trial the advocate for the libelant said he was informed by their correspondent at Galveston that he could not locate their only witness; therefore he had no witnesses whatever.

The respondent has produced the testimony of Morgan James Jones, the master

of the Brazilier on the day in question, taken by commission in London, England, on the 29th day of December, 1926, and the testimony of Capt. C. R. Megee, the pilot of the Brazilier, on the day in question, taken by deposition at Galveston, Tex., on the 26th day of October, 1927.

I find the facts as follows:

At all the times hereinafter mentioned the libelant was a Texas corporation, and the owner of the Barge No. 1 and the tug Anita, and up to the time of the collision hereinafter described the Barge No. 1 was seaworthy and in all respects properly manned and equipped.

At all the times hereinafter mentioned the respondent, Lloyd Royal Belge Societe Anonyme, was a Belgian corporation, and the owner and operator of the steamship Brazilier.

The jurisdiction of this court is admitted.

On February 9, 1921, the Barge No. 1 was being towed, light, by the tug Anita, from the Texas City docks, and was proceeding down the Texas City channel on her starboard side, nearing a gradual bend in the channel, and the steamship Brazilier, lightly loaded, was coming up the channel, and because of her depth of 18 feet she was in midchannel, with the tug Propeller lashed on her starboard bow.

The tug Anita had the Barge No. 1 in tow on a single hawser, variously estimated as being of the length of from 40 to 100 feet.

Had the Anita sounded a one-blast signal and held her starboard side of the channel, she and her tow would have passed safely the Brazilier port to port, but the Anita, then distant 300 yards to a quarter of a mile from the steamship Brazilier, sounded a two-whistle signal indicating a desire for a starboard to starboard passage, which was answered by the steamship Brazilier with a two-whistle signal, and the Brazilier's helm was put hard a starboard.

The wind, however, was blowing from the westward at a rate of 35 miles an hour, and the No. 1, light, and standing high out of the water, was blown over across the channel, and it being apparent that a collision would occur, the engine of the Brazilier, a single-screw vessel, was reversed and put full speed astern. In backing, the stern of the Brazilier went to port and her bow to starboard, where it came into contact with the bank.

The Texas City channel is a narrow dredged channel, and in speaking of the bank it is the side of the channel which is referred to, although there is a body of water beyond that bank of sufficient depth to float the Anita and the Barge No. 1 when light, but not the Brazilier.

With the Brazilier backing and her bow against the bank on her starboard side, the No. 1, by the force of the wind, was about amidships, on her starboard side, brought into contact with the stem of the Anita.

The proof of damage to the Barge No. 1 is slight, but I think sufficient to show some damage.

The Anita cut the hawser before the No. 1 came into contact with the Brazilier, and, when the vessels came into contact, the Anita was in the shallow water beyond the bank of the channel.

The Brazilier continued backing and backed clear.

The collision occurred on February 9, 1921; the libel herein was filed July 19, 1926, more than five years and a half after the event; the respondent had notice of libelant's claim of damage in November, 1921.

On the facts as found, the fault of the libelant's tug Anita seems to be clearly established.

The libelant called no witnesses, but contented itself with introducing the testimony of pilot Megee, taken by deposition on notice by respondent, and with pointing out inconsistencies in the testimony given by the master on commission, introduced in evidence by libelant, and the testimony of the pilot of the Brazilier given more than five years after the event.

The master was obliged to depend entirely on his recollection, but the pilot was assisted in refreshing his recollection by a sworn statement made by him on June 1, 1921, when his recollection was clearer than at the time his testimony was taken by deposition.

Respondent offered the affidavit, the so-called sworn statement of June 1, 1921, in evidence, but it was not competent, and the objection of the libelant to its receipt in evidence is sustained, and I have not read or considered the said affidavit.

One thing, however, stands out prominently in this case, whether you accept the testimony of the master or the pilot, and that is the fact that the Anita violated the narrow channel rule, without any necessity for such violation being shown, when she gave the

two-whistle signal and attempted to go to her port side of the channel and take the Barge No. 1 across the bow of the Brazilier.

This was a violation of the statutory requirement as to navigation in a narrow channel, and the burden resting on her is great. The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; The No. 25 (C. C. A.) 266 F. 331, 335; The Charles R. McCormick (D. C.) 15 F.(2d) 386.

█ The fact that the Brazilier accepted the two-blast signal of the Anita does not make the Brazilier liable, because she did what she could with her helm to assist in carrying out the proposed maneuver, and the distance between the vessels was too short to have made it possible to accomplish anything by crossing the signal.

When the Brazilier saw, as she did, that by proceeding ahead a collision was inevitable, she quickly did what she was legally required to do, stopped and reversed her engines and attempted to prevent the collision. The New York, 175 U. S. 187, 207, 20 S. Ct. 67, 44 L. Ed. 126; Lehigh C. & Nav. Co..v. Compagnie Generale Transatlantique (C. C. A.) 12 F.(2d) 337.

There was not sufficient time to have twisted the Brazilier so as to pass the Anita and No. 1 to starboard, and the Sammie (C. C.) 37 F. 907, is not in point.

The Adriatic (D. C.) 1 F. 349; The Australia (C. C. A.) 120 F. 220; The Sagua (D. C.) 42 F. 461; The Panther (C. C. A.) 5 F.(2d) 64; The La Bretagne (C. C. A.) 179 F. 286, cited by the libelant are not in point.

█ The Brazilier acted in extremis, and the fault of the Anita is so obvious and inexcusable that this court should not be astute to find fault on the part of the Brazilier. The Victory & The Plymothian, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519; The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84.

I find as conclusions of law:

That the tug Anita, owned and operated by the libelant, was solely at fault for her violation of the narrow channel rule, and having initiated the maneuver of crossing the bow of the Brazilier with the No. 1, for not having kept the No. 1 clear of the Brazilier.

That the Brazilier was without fault in accepting the two-blast signal of the Anita and heading to port, and in reversing her engine and backing to escape from the No. 1, which the wind was setting over on the Brazilier, notwithstanding that by backing the bow of the Brazilier went to starboard to the bank, and her stern went to port and out in the stream, and that said reversing and backing was an act in extremis.

That the libelant was not the innocent owner of the barge No. 1, but was the owner and operator of both Barge No. 1 and the tug Anita, which tug was solely at fault, and libelant is not entitled to recover any damages against the respondent.

The respondent is entitled to a decree dismissing the libel, with costs against the libelant.

A decree may be entered in favor of the respondent, dismissing the libel, with costs against the libelant. Settle decree on notice.

If it is not believed that this opinion is a sufficient compliance with rule 46½ of the Admiralty Rules (28 USCA § 723), findings of fact and conclusions of law may be submitted.