PORELLO v. UNITED STATES et al.

No. 96.

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1946.

Rehearing Denied Jan. 31, 1946.

Writ of Certiorari Granted May 6, 1946.

See 66 S.Ct. 1018.

Transport "Thomas Stone." The libellant was in the employ of the impleaded respondent, American Stevedores, Inc., which was engaged under contract with the United States in loading the vessel. He was seriously injured by the falling of a strongback from the hatch of the third platform deck into the No. 1 lower hold. The District Court held the vessel owner at fault for supplying a strongback which was defective in that it lacked the customary locking device on one end, and held the stevedoring company at fault because its foreman negligently loaded the cargo in a manner which caused the strongback to be unshipped. The libellant was given a decree against the United States for $11,-719.39, less $1,421.77 already received by way of compensation under the Longshoremen's and Harbor Workers' Compensation Act, § 1 et seq., 33 U.S.C.A. § 901 et seq., and the United States was given contribution from American Stevedores, Inc., for one-half the damages less the above mentioned credit. Both the United States and the stevedoring company have appealed.

The United States contends (1) that the suit does not lie under the Public Vessels Act, (2) that the absence of a locking device on the strongback was not the proximate cause of the accident, and (3) that, if liable to the libellant, it is entitled to complete indemnity from the impleaded respondent. The latter contends that the decree is wrong in awarding contribution to the United States in any amount. The libellant has filed assignments of error asserting inadequacy in the award of damages and asks us to increase it.

 The question of jurisdiction under the Public Vessels Act was raised by exceptions to the libel. They were overruled in Porello v. United States, D.C., 53 F.Supp. 569. Any doubt as to the correctness of that ruling is set at rest by the recent decision of the Supreme Court in Canadian Aviator, Ltd. v. United States, 324 U.S. 215, 228, 65 S.Ct. 639, where the court said that the statute was intended to impose on the United States the same liability imposed by the admiralty law on the private shipowner. That a private shipowner would be liable to a stevedore for personal injuries caused by defective equipment or negligence is elementary. La Guerra v. Brasileiro, 2 Cir., 124 F.2d 553, certiorari denied 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220; United States Fidelity & Guaranty Co. v. United States, 2 Cir.,

John F. X. McGohey, U. S. Atty., of New York City (Howard F. Fanning and Thomas H. Walker, both of New York City, of counsel), for respondent-appellant.

Alexander & Ash, of New York City (Edward Ash of New York City, of counsel), for impleaded respondent-appellant.

Jacob Rassner, of New York City, for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit brought under the Public Vessels Act, § 1, 46 U.S.C.A. § 781, against the United States to recover damages for personal injuries sustained by a stevedore, while stowing cargo in the hold of the Navy

152 F.2d 46. The District Judge found that the failure to have a lock on the strongback was negligent. The evidence supports this finding. Such a lock is customary, and the plans of the vessel called for it; but no lock was installed and its lack was visible to the naked eye. The United States really offers no excuse for its failure, but contends that the proximate cause of libellant's injuries was the negligence of the stevedoring company.

At the time of the accident the libellant was one of a gang of stevedores stowing cargo in No. 1 lower hold. The work was in charge of Di Mare, foreman of the gang. A military vehicle had been lowered into the hold and landed on the tank top preparatory to stowing it in the starboard wing aft. The vehicle was handled by wire slings, the perpendicular parts of which were separated by wooden spreaders above the top of the vehicle to prevent the wire from scraping it. After the vehicle was landed Di Mare ordered the winchman to "pick it up a little." As the vehicle did not move, in response to the order, it was repeated. The raising of the vehicle unseated the strongback, causing it and a number of the hatch cover planks to fall into the hold and hit the libellant. Di Mare, the foreman, knew that the lock was missing and should have realized the danger of unseating the strongback, if the vehicle was raised. The trial judge found Di Mare was negligent in handling the draft, and that the libellant's injuries resulted from the negligence of both the respondent and the stevedoring company. Each wrongdoer claims that the other's negligence was the sole cause of the accident. The United States argues that its fault created a situation which was harmless while cargo was being lowered into the hold and only became dangerous by reason of the supervening negligence of the gang foreman in ordering the vehicle to be raised in such a manner as to unseat the strongback. In support of the argument counsel cites The M. E. Luckenbach, D. C., 200 F. 630, affirmed 2 Cir., 214 F. 571; The Sunnyside, 2 Cir., 251 F. 271; The Mars, D.C.S.D.N.Y., 9 F.2d 183; The Aden Maru, D.C. S.D.Tex., 51 F.2d 599. The stevedoring company, on the other hand, argues that had the beam been locked, the raising of the vehicle against it would not have unshipped it and consequently the absence of the lock was the efficient, i. e., proximate, cause of the accident. The unsound notion that there can be but one "proximate cause" of an accidental injury has caused some confusion in the cases. None of the authorities cited is applicable to the facts at bar. In our opinion the absence of the lock and Di Mare's negligent order operated concurrently in producing the result. Hence both the tort-feasors would be jointly and severally liable and each should bear one-half the libellant's damages except for the statutory immunity granted by section 5, 33 U.S.C.A. § 905, which makes the compensation liability exclusive with respect to the employer.

For a right of contribution to accrue between tort-feasors, they must be joint wrongdoers in the sense that their tort or torts have imposed a common liability upon them to the party injured. A.L.I.Restitution § 86; 13 Am.Jur., Contribution § 51. Since the libellant has no cause of action against his employer, the United States can claim no contribution on the theory of a common liability which it has been compelled to pay. See Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086; Walker v. Kroger Grocery & Baking Co., 214 Wis. 519, 252 N.W. 721, 92 A.L.R. 680. It claims full indemnity by reason of its contract with American Stevedores, Inc. This required the stevedoring company to carry insurance protection against liability to its employees arising under the Longshoremen's and Harbor Workers' Compensation Act; and contained also the following provision: "The Stevedore * * * shall be responsible for any and all damage or injury to persons and cargo while loading or otherwise handling or stowing the same. * * * through the negligence or fault of the Stevedore, his employees and servants."

The impleaded respondent argues that the provision must be construed as though the final clause read "through the negligence or fault of the Stevedore alone"; that it did not agree to indemnify the United States against damages to which a defect in the ship's equipment contributed. But we do not think the contract can be limited to negligence or fault for which the stevedore alone was liable. The stevedore's agreement to carry compensation insurance forbids that construction, because, having insured, it would not be liable to the person injured. It is reasonable to construe the clause to cover cases where in respect to the injured person both the

contractor and the shipowner are at fault. See United States v. Wallace, 9 Cir., 18 F.2d 20, 21. The primary duty to furnish its employees a safe place to work rested on the stevedore. It was in control of the conditions under which the work was to be done and its foreman knew the bolt was missing and should have foreseen the danger and avoided it. Although the stevedore's default in that respect might not relieve the shipowner from liability to the injured workman, it would make it reasonable for the shipowner to insist that the stevedore alone bear the loss, and the quoted provision was inserted in the contract for that purpose. The United States argues that, even without such a provision, it would be entitled to full indemnity. See Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 327, 16 S.Ct. 564, 40 L.Ed. 712; Burris v. American Chicle Co., 2 Cir., 120 F.2d 218, 222; Seaboard Stevedoring Corp. v. Sagadahoc S. S. Co., 9 Cir., 32 F.2d 886. However that may be, we think the contract entitles it to full indemnity and the decree must be modified accordingly.

■ American Stevedores, Inc., in its answer pleaded that the court lacked jurisdiction to grant any recovery to the libellant because by accepting compensation payments he elected to pursue his remedy under the Longshoremen's and Harbor Workers'. Compensation Act, 33 U.S.C.A. § 933(a). According to paragraph (a) of section 933 the election is to be made "by giving notice to the deputy commissioner in such manner as the commission may provide"; no other method of election is specified. The effect of accepting compensation payments is prescribed in paragraph (b) of the section. Before the 1938 amendment of paragraph (b), mere acceptance of compensation operated as an assignment to the employer of the employee's cause of action against a third person; since the amendment, the acceptance must be "under an award in a compensation order" to effect such an assignment. See Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, 128, certiorari denied, 66 S.Ct. 57. In the case at bar, the libellant filed no claim for compensation but did file on March 30, 1943, notice of election to sue the third party. His acceptance of voluntary payments of compensation without any award did not, in our opinion, impair his capacity to sue. Cf. Ross v. C. D. Mallory Corp., N.J.Sup., 1943 A.M.C. 729.

■ Finally, we come to the libellant's contention that the damages awarded him were inadequate. Although the libellant did not appeal, he filed assignments of error pursuant to Rule 38(3) of the rules of this court. An appellate court may increase an award in admiralty. Standard Oil Co. v. Southern Pac. Co., 268 U.S. 146, 155, 45 S.Ct. 465, 69 L.Ed. 890; The Spokane, 2 Cir., 294 F. 242, certiorari denied, 264 U.S. 583, 44 S.Ct. 332, 68 L.Ed. 861; Drowne v. Great Lakes Transp. Corp., 2 Cir., 5 F.2d 58. The District Court's opinion states that the damages awarded were composed of the following items: Pain and suffering to date $1,000; future pain and suffering $1,000; loss of earnings to date $3,000; present value of future loss of earnings $6,000; hospital expenses $581.77 —a total of $11,581.77. At the date of the accident September 23, 1942, Porello was 55 years old, which gave him a life expectancy of 17 years. His earnings for the year preceding the accident were $3,000, but the trial judge found that his average earnings were $1,500. He found also that his injuries "permanently incapacitate him from performing further heavy manual labor, but do not prevent him from doing other work of a less strenuous nature." and estimated his disability to be 25%. In computing the loss of future earnings the District Judge took $375 as the annual loss and capitalized it at 2½% for the full life expectancy. It is clear from the medical testimony that putting the disability at 25% was much too low. The man was incapable of any active work and there is no evidence that he had qualifications which might fit him for an office job. We think a disability of 75% would be closer to the facts. The average earnings were also taken at too low a figure. The libellant's earnings from July 1, 1938, up to his accident in September, 1942, show a yearly average of $1,700. On the other hand capitalization at 2½% for 17 years was too favorable to the libellant both in respect to the rate and the number of years he could continue to do the heavy work of a stevedore. If we took an annual loss of $1275 (75% of $1700) capitalized at 3% for ten years, the present value of future loss of earnings would be $11,200. In computing future losses we think the trial judge was justified in taking the libellant's average yearly earnings rather than earnings for the year immediately preceding the accident. But in computing wages lost during the two years preceding the trial, in view of the

demand for longshoremen's services during the war, of which we may take judicial notice, we think the allowance for this item should be $6,000 instead of $3,000. The allowance for pain, $2,000, seems unduly small in view of the medical testimony. We raise it to $4,000. Making the corrections above suggested would give a total award of $21,781.77. The award of damages is increased to that figure.

The decree is modified in accordance with the foregoing opinion and, so modified, is affirmed.

On Petition by American Stevedores, Inc., for Rehearing.

PER CURIAM.

This petition for rehearing is limited to so much of our decision as grants full, rather than one-half, indemnity to the United States against the impleaded respondent, American Stevedores, Inc. The petitioner argues that our opinion is erroneous in applying common law principles of contribution to a suit in admiralty in which we have affirmed findings that the libellant's injury resulted from the concurrent negligence of both the respondent and the impleaded respondent. We are by no means convinced that the rule of The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801, which was not previously called to our attention, is controlling in a situation such as this, but the point may be considered left open since determination of the right of contribution is not essential to decision as to indemnity under the respondent's contract.

The petitioner asserts that our interpretation of the indemnity contract is contrary to the authorities in this and other circuits. We do not so read them. Shamrock Towing Co. v. City of New York, 2 Cir., 16 F.2d 199, is the case cited from our own circuit. There a libel was filed against the city for breach of charter in failing to return the chartered scows in good condition. The city impleaded a corporation which was employed under contract to unload the scows. The chartered scows were damaged by fire and both the city and the contractor were liable to the libellant for negligent failure to supply fire protection at the dumping ground. A further question was whether the contractor was bound to stand the whole loss because of its agreement to hold the city harmless for damages caused to the scows "by the

negligent acts or omissions of the contractor." We held the contract to cover only "cases in which the city's liability to the scow owners arose without fault on its own part." Since the city might be liable to the scow owner under its charter without fault on its part, it was possible to limit the indemnity provisions as we did without depriving them of all utility. In the case at bar, however, the United States could be liable only if itself at fault; hence a similar construction here would make the indemnity provision meaningless. Without analyzing the authorities from other circuits cited by the petitioner it will suffice to say that none of them, in our opinion, is contrary to the decision we have reached. Nor need we be troubled by doubt as to admiralty jurisdiction extending to a contract of indemnity, since jurisdiction could rest on the fact that the indemnitee is the United States, 28 U.S.C.A. § 41(1); see Tuthill v. United States, D.C.N.D.Ill., 38 F. 538, appeal dismissed, 136 U.S. 652, 10 S.Ct. 1075, 34 L.Ed. 557.

Petition for rehearing denied.